# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK S. SOKOLSKY, | Case No. 1:13-cv-02044 LJO DLB PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF TO EITHER FILE SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS |
| v. | |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | THIRTY-DAY DEADLINE |

Plaintiff Mark S. Sokolsky ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on December 16, 2013. On September 11, 2014, he filed a First Amended Complaint. He names the State of California, Christine Mativo, Rebecca Domrese, Audrey King, Alan Carlson, Brian Bowley, Marisa Bigot, Kamala Harris, and John/Jane Does 1 to 100 as Defendants.

**A.    SCREENING REQUIREMENT**

The Court is required to screen Plaintiff's complaint and dismiss the case, in whole or in part, if the Court determines it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but

1

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678. Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121-23 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), but Plaintiff's claims must be facially plausible to survive screening, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**B.     SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently detained pursuant to California's Sexually Violent Predator Act at Coalinga State Hospital ("CSH") in Coalinga, California, where the events giving rise to this action took place.

Plaintiff alleges the following. In December of 2006, Plaintiff negotiated the establishment of a kosher meals program with May O'Brien, who was head of the food services department at CSH at that time. Also attending that meeting was Defendant Mativo. Plaintiff was the first person to participate in the kosher meal program at CSH.

Shortly thereafter, May O'Brien retired, and Defendants abrogated the agreement by serving Plaintiff non-kosher foods, and further contaminating what kosher foods were served thereby rendering all food served to Plaintiff to be non-kosher. Plaintiff alleges the following ongoing violations of the kosher meal program:

1) Every single meal issued to Plaintiff which is supposed to be kosher has been contaminated. Plaintiff states the kosher meals are heated with trays containing pork or other non-

kosher foods.

2) No food services heating container is "kashered" according to "Halacha" (Jewish law) standards. This includes retherm equipment, ovens, pots, pans, and other main kitchen equipment and tools.

3) Trays, plates and bowls are filthy as if unwashed.

4) Plaintiff is frequently denied paper plates and bowls.

5) Food is processed without rabbinical supervision and is therefore not kosher.

6) Defendants Mativo, Domrese and John/Jane Does 1 to 100 serve food in plastic Ziplock bags thereby rendering the food non-kosher.

7) Defendants Mativo and Domrese have reported to Defendant King that they have set aside an area of the main kitchen to process kosher foods according to kosher standards, but these acts violate kosher standards since a kosher kitchen must be separate and entirely used for kosher food preparation at all times with rabbinical supervision.

8) During celebrations of American holidays such as New Year's Day, Presidents Day Independence Day, Labor Day, and Thanksgiving, Plaintiff is not given a kosher equivalent of the celebratory meal.

9) Plaintiff is not given a proper substitute for entrée items, and most options for substitutions have been removed from the kosher meal plan.

10) The meals provided to Plaintiff are marked "For Correctional Use" and are smaller in portion and nearly pure carbohydrates.

11) Plaintiff's requests for substitution of foods that he cannot ingest are ignored and rejected.

12) Plaintiff is provided bagels; however, the bagels are not kosher.

In addition to the above noted violations, Plaintiff complains that he has a serious medical condition and has developed allergies to certain foods. Defendants allow no accommodation for substitution of any foods to which Plaintiff is or may become allergic and attempt to force Plaintiff to accept foods he cannot and will not eat.

In 2010, Plaintiff and Defendants Mativo and Domrese appeared at Plaintiff's Wellness and

3

Recovery Team ("WRT"). Plaintiff explained the shortcomings of the kosher meal plan. Defendants Mativo and Domrese promised the WRT members and the registered nurse present that they would immediately make the corrections requested by the WRT members and nurse. None of the changes requested by the WRT members and nurse were made to the kosher meal plan.

Plaintiff filed administrative grievances with Defendant King. Defendant King routinely forwarded the grievances to Defendants Mativo and Domrese. In every case, Defendants lied to Plaintiff and denied there was any problem. After a while, the grievances went unanswered.

Recently, Defendants Bowley and Bigot issued an order that no resident in Unit 18 can bring food from the dining room back to Unit 18. Plaintiff is therefore required to ingest his kosher food where non-kosher food is served and consumed by non-Jews in violation of the dictates of Jewish law. Defendants Bigot and Bowley declared that residents who violate this order would be warned, negatively charted, or written up for the WRT as a "barrier to discharge." Hospital police officers have been authorized to seize and remove foods from patients who violate the order. Violators, including Plaintiff, have been ordered to be confined to quarters which results in Plaintiff being unable to discharge his personal religious obligations.

Defendant State of California leases a canteen which consists of a retail store and a restaurant to a private contractor. The retail store and restaurant do not provide for kosher foods, and Defendant State of California fails to require them to do so.

Plaintiff states that CSH is without a Jewish Chaplain, and Defendants King and State of California have refused to obtain one thereby preventing Plaintiff from practicing his faith. Plaintiff claims he is unable to celebrate the festival of Sukkot because he is prohibited from building a sukkah. He is prohibited from lighting Chanukah candles. He is prohibited from fully celebrating Purim due to Defendants' policies. He states he cannot celebrate Shavuos because Defendants King, Mativo, and Domrese fail to provide Plaintiff with the required dairy diet and refuse to allow Plaintiff to decorate his quarters. Plaintiff claims he is not fully able to celebrate Passover.

Plaintiff states he suffers from the medical condition Common Variable Immunodeficiency ("CVID"). CVID is a condition that affects Plaintiff's daily activities and imposes on Plaintiff lifelong handicaps and permanent loss. CVID is always fatal but treatment can substantially

4

lengthen the time the patient remains alive. Plaintiff's condition has already given him gout, plaque psoriasis, hypothyroidism, and rheumatoid arthritis. He is at great risk for lung and sinus infections, and especially for pneumonia. As a result of CVID, Plaintiff has developed allergies to foods such as strawberries; nevertheless, Defendants continue to serve Plaintiff foods containing strawberries.

Plaintiff claims Defendant King provides inadequate medical care to patients of CSH. Plaintiff claims Defendants King and State of California use the lack of medical care in a manner so as to execute CSH residents merely because they are sexually violent predators. Plaintiff claims Defendant King's medical personnel regularly purge his medical file thereby making it impossible for any physician to track the progress or treat Plaintiff's CVID condition. Plaintiff has requested that his medical file be kept intact but his demands have been denied. Plaintiff complains that the ratio of doctors to patients is so low that medical care is impossible, abysmal, and well below the standard required of the CDCR.

Plaintiff further claims that his CVID condition requires that he not ingest soy in any form, yet Defendants lace his food with soy and soy derivatives, or feed him vegetarian meals consisting mostly of soy. He states he has a medical need for a high animal protein diet, yet Defendants continuously feed him a high carbohydrate diet. As a result, Defendants appear to be intentionally causing harm to Plaintiff by encouraging the CVID disease.

Plaintiff claims he was intentionally screened into the SVPA process in 1999-2000 in retaliation for his litigation activities against the CDCR. He claims there is no evidence that he has a mental disorder, and he claims he has no documented sexual misconduct other than the crimes for which he was convicted. As a result, he claims he has been confined unconstitutionally. He claims that any diagnosis of a mental disorder is worthless and the result of medical malpractice because he has not been interviewed by any staff psychiatrist or psychologist. He states he was given a false Axis II diagnosis of "Narcissistic Personality Disorder" in 2007. He claims there are no signs, symptoms, or recent indicia of a mental disorder, and therefore his current civil commitment under the SVPA is in violation of his due process rights. He further claims he has received therapy from a private source in the 1990s; however, Defendants require him to attend their therapy sessions in violation of his constitutional rights.

5

Plaintiff further claims that Defendant State of California intentionally and fraudulently uses faulty assessment tools and flawed methodologies to determine the recidivism rates of sex offenders. As a result, Plaintiff has been erroneously subjected to the deprivation of his liberty under the SVPA. Plaintiff also claims Defendant State of California has imposed civil confinement rather than outpatient treatment for those detained under the SVPA even though all evidence points to outpatient treatment being significantly more effective in curing sex offenders. Plaintiff claims Defendant State of California has failed to release him even though he no longer poses a danger to the community.

Plaintiff is seeking injunctive relief to compel Defendants to: 1) build or otherwise provide functional kitchen facilities that are separate and distinct from those already existing at CSH for the sole purpose of preparing and providing kosher meals and operated under strict Orthodox rabbinical supervision; 2) remove and dispose of current equipment at CSH used for heating/reheating and replacing same with conventional kitchen facilities complete with a sanitized serving line and on-site grill and griddle to cook foods; 3) provide separate food storage and dining facilities at CSH where kosher foods are not cooked, heated or consumed with non-kosher foods, especially pork; 4) provide each housing unit at CSH with additional microwave ovens for the sole use of heating kosher food, with the ability to secure such microwave ovens so they cannot be used to heat non-kosher food; 5) accommodate the celebration by patients at CSH of purely American holidays with foods that comply with religious dietary and medical requirements, rather than requiring such patients to choose either celebrating the holiday or keeping a religious diet; 6) require a level of care and/or law enforcement staff at CSH to report racial and religious discrimination directly to the Office of the California Attorney General, who would then be required to take remedial action against such discrimination; or that the Court appoint a special master to ensure compliance with applicable law; and 7) reassemble the disparate medical records of Plaintiff to provide meaningful medical treatment for CVID. He further seeks declaratory relief that the actions and omissions violated Plaintiff's rights under the Constitution and laws of the United States. He also seeks declaratory relief in the form of an order declaring the SVPA to be punishment and therefore unconstitutional. He seeks an order directing the United States Attorney to investigate and prosecute for mass murder and

6

attempted murder those persons responsible for using the California SVPA as an execution tool. He seeks injunctive relief that Defendants be restrained from having custody of Plaintiff and all detainees under the SVPA until Defendants are able to provide Plaintiff and all detainees with outpatient treatment or unconditional discharge. He seeks declaratory relief that Defendants' policies of maximum security conditions are unconstitutional.

**C.   DISCUSSION**

   1.   Eleventh Amendment Immunity

Plaintiff names the State of California as a defendant for the purpose of obtaining injunctive relief. However, the Eleventh Amendment erects a general bar against federal lawsuits brought against the state. Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (citation and quotation marks omitted). While "[t]he Eleventh Amendment does not bar suits against a state official for prospective relief," Wolfson, 616 F.3d at 1065-66, suits against the state or its agencies are barred absolutely, regardless of the form of relief sought, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900 (1984); Buckwalter v. Nevada Bd. of Medical Examiners, 678 F.3d 737, 740 n.1 (9th Cir. 2012). Thus, Plaintiff may not maintain a claim against the State of California.

   2.   Linkage

Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue. Ashcroft v. Iqbal, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed under a theory of *respondeat superior*, and some causal connection between the conduct of each named defendant and the violation at issue must exist. Iqbal, 556 U.S. at 676-77; Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

Here, Plaintiff fails to state how Defendants Carlson and Harris participated in the violations at issue. Plaintiff must specifically state how each named Defendant personally acted to deprive him

7

of his rights.  As noted above, liability may not be imposed under a theory of *respondeat superior*.

   3.  <u>First Amendment Free Exercise of Religion</u>

  The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). "Under the Constitution, 'reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'" <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1209 (9th Cir. 2008) (quoting <u>Cruz v. Beto</u>, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (addressing the rights of convicted prisoners)). "[C]ivil detainees retain greater liberty protections than individuals detained under criminal process . . . ." <u>Jones v. Blanas</u>, 393 F.3d 918, 932 (9th Cir.2004) (citations omitted). "However, as with other First Amendment rights in the inmate context, detainees' rights may be limited or retracted if required to 'maintain [ ] institutional security and preserv[e] internal order and discipline.'" <u>Pierce</u>, 526 F.3d at 1209 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 549, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); <u>see</u>, <u>e.g.</u>, <u>Freeman v. Arpaio</u>, 125 F.3d 732, 737 (9th Cir. 1997).

  "Restrictions on access to 'religious opportunities' . . . must be found reasonable in light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates;' (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation)." <u>Pierce</u>, 526 F.3d at 1209 (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); <u>see also</u> <u>Beard v. Banks</u>, 548 U.S. 521, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); <u>Mauro v. Arpaio</u>, 188 F.3d 1054, 1058–59 (9th Cir. 1999) (en banc)). "Further, [when] dealing with [civil] detainees, to satisfy substantive due process requirements the restriction or regulation cannot be intended to serve a punitive interest." <u>Pierce</u>, 526 F.3d at 1209 (citing <u>Bell</u>, 441 U.S. at 535, 99 S.Ct. 1861, 60 L.Ed.2d 447).

In this case at the pleading stage, Plaintiff presents a cognizable claim for violation of his First Amendment right to free exercise of religion by Defendants Mativo, Domrese, King, Bowley, and Bigot.

4. RLUIPA

RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc–1(a). To succeed on a RLUIPA claim, the plaintiff must allege facts demonstrating that defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994–95 (9th Cir.2005). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation at issue "substantially burdens" that religious exercise. Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir.2008).

"Courts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1124-25 (9th Cir. 2013) (citing Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S.Ct. 2325 (2003)) (internal quotation marks omitted).

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, Sossamon v. Texas, __ U.S. __, __, 131 S.Ct. 1651, 1655 (2011), and RLUIPA does not contemplate liability of government employees in their individual capacity. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for injunctive relief against defendants acting within their official capacities.

In this case at the pleading stage, Plaintiff raises a cognizable claim under RLUIPA against

9

Defendants Mativo, Domrese, King, Bowley, and Bigot.

5.   Conditions of Confinement

As a civil detainee, Plaintiff is entitled to treatment more considerate than that afforded pretrial detainees or convicted criminals. Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004). Plaintiff's right to constitutionally adequate conditions of confinement is protected by the substantive component of the Due Process Clause. Youngberg v. Romeo, 457 U.S. 307, 315, 102 S.Ct. 2452 (1982).

A determination whether Plaintiff's rights were violated requires "balancing of his liberty interests against the relevant state interests." Youngberg, 457 U.S. at 321. Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," but the Constitution requires only that courts ensure that professional judgment was exercised. Youngberg, 457 U.S. at 321-22. A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 322-23; compare Clouthier v. County of Contra Costa, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (rejecting the Youngberg standard and applying the deliberate indifference standard to a pretrial detainee's right to medical care, and noting that pretrial detainees, who are confined to ensure presence at trial, are not similarly situated to those civilly committed).

At the pleading stage, Plaintiff makes out a cognizable claim of violation of his substantive due process rights as to Defendant King, Mativo, and Domrese for their alleged failure to provide medically appropriate food with respect to his CVID condition.

6.   Supervisor Liability

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional

deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow, 681 F.3d at 989) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

A defendant's actions in responding to a plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill.1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir.2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F.Supp. at 10; Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo. 1986). Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a section 1983 action. Buckley, 997 F.2d at 495.

Therefore, Plaintiff may not maintain a claim against Defendant King with respect to her processing of Plaintiff's administrative grievances.

7. Challenge to Detention

In his complaint, Plaintiff makes numerous allegations implicating his underlying civil commitment under the SVPA. He claims he was intentionally screened into the SVPA process in 1999-2000 in retaliation for his litigation activities. He claims there is no evidence he has a mental disorder, and therefore his continued detention is unconstitutional. He claims Defendant State of California continues to use fraudulent and faulty assessment tools and methodologies to subject

Plaintiff to deprivation of his liberty.

A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) (quoting Preiser v. Rodriguez, 411 U.S. 475, 485 (1973)); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases. In contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is the proper method for a prisoner to challenge the conditions of that confinement. McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991); Preiser, 411 U.S. at 499; Badea, 931 F.2d at 574; Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases. Therefore, Plaintiff's avenue for relief concerning his remedies with respect to the fact of his detention lies in habeas.

In addition, Plaintiff's claims concerning his detention are subject to dismissal under Rule 18, which precludes Plaintiff from bringing unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); see also Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (unrelated claims against different defendants belong in separate suits and complaints violating that principle should be rejected).

### D. CONCLUSION AND ORDER

Plaintiff's First Amended Complaint states the following cognizable claims: (1) violation of Plaintiff's First Amendment rights to free exercise of religion by Defendants Mativo, Domrese, King, Bowley, and Bigot; (2) violation of RLUIPA by Defendants Mativo, Domrese, King, Bowley, and Bigot; and (3) violation of Plaintiff's substantive due process rights by Defendants King, Mativo, and Domrese for conditions of confinement. It does not state any further claims against any other Defendants.

If Plaintiff files an amended complaint, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Further, Plaintiff is notified that his amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

If Plaintiff chooses to amend, this will be his final opportunity.

If Plaintiff is willing to proceed on his cognizable claims, he may notify the Court in writing. The Court will then dismiss Plaintiff's other claim(s) and Defendant(s), and provide Plaintiff with further instructions regarding service of a summons and the complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only on the cognizable claim identified above.

3. <u>If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.</u>

IT IS SO ORDERED.

Dated:  **July 25, 2015**                    /s/ *Dennis L. Beck*
                                                                UNITED STATES MAGISTRATE JUDGE